# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SCOTT D.H. REDMAN, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | No.    11 C 9044 |
| v. ) ) | Magistrate Denlow (consent filed) |
| TAKE CARE HEALTH SYSTEMS, LLC, a Delaware limited liability company, and TAKE CARE HEALTH ILLINOIS, P.C., an Illinois corporation, ) ) ) ) ) | |
| Defendants. ) | |

## PLAINTIFF'S BRIEF IN SUPPORT
## OF REQUEST FOR ATTORNEYS' FEES

Plaintiff Scott D.H. Redman ("Plaintiff"), on behalf of himself and the Settlement Class, submits this brief in support of his request for attorneys' fees.

## Introduction

This Court preliminary approved a class-wide Settlement Agreement that established a settlement fund of $1,500,000 ("Settlement Fund"), from which would be paid class members, Plaintiff, notice and administration costs and attorneys' fees and costs. Relevant to this brief, attorneys' fees were negotiated to be 30% of the Settlement Fund.[1] However, at the Preliminary Approval Hearing, this Court indicated that, while not having any problem with the 30% contingency fee, he may tie the fee to the amount claimed from the Settlement Fund, rather than basing it on the entire amount of the Settlement Fund. The parties did not, at that time, address this Court's statement. Respectfully, Plaintiff requests that this Court award 30% of the entire

---

[1] Class Counsels' effective fee would actually be less than 25% of the Settlement Fund, as the Settlement Agreement provides that (a) the 30% fee is inclusive of costs and (b) Class Counsel will pay 16.67% of their 30% fee award (i.e., 5% of the fund) to the Chicago Bar Foundation.

1

Settlement Fund as attorneys' fees and costs, because, pursuant to Supreme Court and Seventh Circuit precedent, it would be improper to award a contingency fee tied to the amount claimed from the Settlement Fund at the conclusion of the case.

## **Legal Discussion**

**I.  THIS IS A COMMON FUND CASE.**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h); *see also Schulte v. Fifth Third Bank*, 805 F.3d 560, 597 (N.D. Ill. 2011). The Settlement Agreement in this case provides that Class Counsel will receive an award of attorneys' fees out of a common fund. *See* Class Action Settlement Agreement and Release ("Settlement Agreement") [DE 27-1], at ¶2.3(D). "This method of recovering attorneys' fees is known as the 'common-fund' doctrine, and holds that class counsel who wins a settlement or judgment creating a commonly-held fund for the benefit of the class is entitled to a reasonable fee drawn from that fund." *See McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 814 (E.D. Wisc. 2009).

**II.  CLASS COUNSEL APPROPRIATELY SEEK A PERCENTAGE OF THE FUND.**

"A district court may award attorneys' fees by either allowing class counsel to recover a percentage of the fund as their fee, the 'percentage-of-the-fee [sic] method,' or by multiplying the number of hours worked by a reasonable hourly rate, the 'lodestar method.'" *McKinnie*, 678 F. Supp. 2d at 814. "However, courts must attempt to award the market price for legal services when determining appropriate fees in common-fund cases, 'in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Id.* (*quoting Taubenfeld v. AON Corp.*, 415 F.3d 597, 598 (7th Cir. 2005)).

"An appropriate attorney's fee award is one that 're-creates' the market for the provided legal services." *Id*. (*quoting Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000)). "The object in awarding a reasonable attorney's fee…is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible. In other words the object is to simulate the market where a direct market determination is infeasible." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). "When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'" *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) (emphasis in original).

In this case, the engagement agreement between Plaintiff and Class Counsel is proof of the market. Plaintiff agreed to pay Class Counsel the greater of hourly rates multiplied by hours expended or 33% of a recovery. *See* Certification of Paul F. Markoff ("Markoff Cert."), at ¶6, included with the *Joint Submission of Materials in Support of Final Approval of the Class Action Settlement Agreement* as **Exhibit 2**.[2] Indeed, each of the many FACTA cases handled by Class Counsel has been a contingent fee case, and each has called for a fee of at least 33% of any recovery. *Id*. at ¶7. Class Counsel has also worked with other firms handling FACTA cases, and each has taken the cases on a contingency fee basis, with the contingency fee being at least 33%. *Id*. at ¶8. It is highly unlikely that any FACTA claimant would retain an attorney to pursue a claim on an hourly basis, because the maximum recovery is $1,000. Attorneys' fees would outpace a potential recovery almost immediately. It is little comfort that a prevailing plaintiff can recover fees from a defendant. *See e.g.*, *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 353 (N.D. Ill. 2008) (notwithstanding the ability to recover attorneys' fees in statutory fee-

---

[2] Plaintiff is not submitting the engagement agreement herewith, as it contains information protected by the attorney-client privilege, as well as sensitive personal information of Plaintiff. However, the agreement is available for in camera inspection if necessary.

3

shifting case, individuals may not be willing to subject themselves to the burdens of suing or be able to find attorneys willing to take on individual cases because "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") *quoting Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1047 (7th Cir. 2007)); *see also Armes v. Sogro, Inc.*, no. 08-C-0244, 2011 WL 1197537, at *6 (E.D. Wisc. Mar. 29, 2011) ("Where statutory damages may be $100 to $1000, how many individuals will spend $350 to file a federal action, expend time and effort in pursuing the case, and risk *owing* costs to the defendant? Few.") (emphasis in original).

In a case under the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*, a statute that provides the same $100 to $1,000 range of statutory damages available under FACTA, the *McKinnie* court found as follows:

> The court accepts counsel's suggestion that the case would be handled on a class action contingency fee basis in the private market. That class members have little motivation to retain counsel on an hourly basis because they are not guaranteed to prevail on their claims and the individual damages suffered were nominal. A contingency fee arrangement is appropriate in such a case because it insulates the plaintiffs from any economic risk if their litigation is ultimately unsuccessful. Therefore, the market rate for the legal services provided by class counsel is a contingency fee.

678 F. Supp. 2d at 815. As the *McKinnie* court did, this Court should find that Class Counsel should be compensated on a contingency fee, percentage-of-the-fund basis.

## III. CLASS COUNSEL'S REQUEST FOR 30% OF THE FUND IS APPROPRIATE.

### A. 30% Is Under Market Rate And Within The Appropriate Range For Common Fund, Contingency Fees.

As set forth in Section II, *supra*, the market rate for this type of case, and, indeed, this specific case, is a 33% contingency fee, thus making Class Counsel's fee request here below

4

market rate.

Further evidence that the sought fee is reasonable is found in fee awards in other cases. In *McKinnie*, the court awarded a 30% fee, accepting counsel's argument that "this amount is appropriate because it simulates the market for small class action claims, which generally involve a contingency fee of one-third of the class fund." 678 F. Supp. 2d at 814. Similarly, the *Schulte* court found a contingency fee of 33.3% reasonable. 805 F. Supp. 2d at 598 (finding that "[a] number of fee awards in common-fund cases from within the Seventh Circuit show that an award of 33.3% of the settlement fund is within the reasonable range" and identifying several cases to support its reasoning).

### B. This Court Should Award 30% Of The Entire Fund Available To The Class, Not Merely 30% Of The Amount Of The Fund Claimed.

The question of whether a common fund contingency fee should consist of a percentage of the entire class fund or merely a percentage of the fund claimed by the class was definitively decided by the Supreme Court in *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980). Boeing contended that attorneys' fees should only be a portion of the fund actually claimed by class members. *Id*. at 477. The Supreme Court, however, held that the contingency fee is appropriately calculated as a percentage of the entire fund available to the class. *Id*. at 481.

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund *as a whole*." *Id*. at 478 (emphasis supplied). Such an approach allows a court prevent the unjust enrichment of beneficiaries of the fund by equitably "assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefitted by the suit."

On the issue of why it is appropriate to assess attorneys' fees against the entire fund, the

Supreme Court found

> Once the class representatives have established the defendant's liability and the total amount of damages, members of the class can obtain their share of the recovery simply by proving their individual claims against the judgment fund. This benefit devolves with certainty upon the identifiable persons whom the court has certified as members of the class. Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery.

*Boeing*, 444 U.S. at 479. Furthermore,

> [t]o claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of the lawsuit upon proof of their identity, *whether or not they exercise it*, is a benefit in the fund created by the efforts of the class representatives and their counsel.

*Id*. at 480 (emphasis supplied). Accordingly, because the entire fund was available to class members, thus constituting a benefit to the entire class, the contingency fee should be based on the entire fund, whether or not class members exercise their right to make a claim on the fund.[3]

Adhering to the clear precedent of *Boeing*, the *McKinnie* court, also hearing a consumer rights case, found

> that an award of attorneys' fees is appropriately based upon the total common fund and not on the amount claimed against it. The $2.1 million settlement amount was available to the entire class, regardless of the fact that a small number of class members actually filed claims. Therefore, an award of attorneys' fees should be calculated based upon the full benefit.

678 F. Supp. 2d at 815 (*citing Boeing*, 444 U.S. at 480, and 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:6, p. 570 (4th ed. 2002) (stating that *Boeing* settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the amount claimed by class members or the amount potentially available to class members by ruling that

---

[3] Perhaps relevant is the fact that class members in this case received direct mail notice. This was not an instance of publication notice, which might or might not reach class members. Because direct mail notice was given here, class members were clearly aware of the benefits available to them and the simple steps necessary to claim those benefits.

class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.)).

Finally, deciding fees based on an *ex post* assessment of the claims made runs counter to the Seventh Circuit's consistent directives to attempt to determine the market rate at the beginning of the engagement.

> [T]the district court must estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed). The best time to determine this rate is the beginning of the case, not the end (when hindsight alters the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets. Individual clients and their lawyers *never* wait until after recovery is secured to contract for fees. They strike their bargains before work begins.

*In re Synthroid Marketing Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (emphasis in original). Here, of course, estimating is unnecessary because we have the benefit of a private plaintiff (Plaintiff) and his attorneys (Class Counsel) negotiating the market rate (33%) at the outset of the engagement. In any event, determining the market rate at the conclusion of the case, when the outcome is known, would violate the standard set by the Seventh Circuit.

## IV. THERE ARE NO OBJECTIONS TO THE FEE AMOUNT REQUESTED.

Class members were notified that the Settlement Fund was $1,500,000 and that Class Counsel would be paid 30% of the Settlement Fund for attorneys' fees and costs. *See* http://clinicsettlement.com/pdf/Notice.pdf. None of the nearly 200,000 class members objected to the settlement.

## V. THE PARTIES NEGOTIATED THE FEE, AND AWARDING LESS THAN 30% OF THE FUND WILL RESULT IN A WINDFALL TO DEFENDANTS.

As set forth in Section II, *supra*, the parties' agreement can give rise to the award of attorneys' fees. In this case, after negotiating the amount of the Settlement Fund and the benefits

7

that would be available to class members, the parties negotiated an attorneys' fee amount of 30% of the Settlement Fund. *See* Markoff Cert., at ¶14. This Court should enforce as written the parties' Settlement Agreement, which is unambiguous. To do otherwise, would provide a windfall to Defendants.

In the Settlement Agreement, Defendants released their interest in the $1,500,000 Settlement Fund. The Settlement Agreement provided that any funds remaining in the Settlement Fund after payments for class member claims, notice and administration costs and attorneys' fees and costs would revert to Defendants, a condition subsequent. At the time the parties executed the Settlement Agreement, Defendants expected that $112,000 of the Settlement Fund would be paid for notice and administration costs and $450,000 of the Settlement Fund would be paid to Class Counsel for attorneys' fees and costs. Defendant could then hope, but not expect, that some of the Settlement Fund might revert back to it if not enough of the Settlement Fund was claimed by class members. But, to be clear, Defendant could not expect a reversion of the $450,000 to be paid to Class Counsel, especially because it was not merely a cap on fees; it was a set amount (albeit subject to Court approval). If this Court were to award less than that amount to Class Counsel, it would amount to a windfall to Defendants.[4] "Were the Court to reduce the award of class counsel's fees, this would not confer a greater benefit upon the class, but rather would only benefit [the defendant]."[5] *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322 (W.D. Tex. 2007).

Conversely, and anticipating an inquiry, the award of a 30% contingency fee would not

---

[4] Imagine if the converse scenario were presented, i.e., Class Counsel petitioning for a higher fee award than was agreed to in a settlement agreement. Not a single court in this country would entertain the idea, citing the terms of the agreement. Just as any defendant would be rightfully outraged at the prospect of paying more than the agreed upon amount, it would be inappropriate to provide Defendant a windfall by an *ex post* modification of the agreement.

[5] Additionally, an award of fees and costs as requested will not diminish the class recovery.

8

amount to a windfall to Class Counsel. Addressing that very argument, the Second Circuit rejected it, finding that "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (*citing Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999) and *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)).

Indeed, Class Counsel took this case with the strong possibility, and probably likelihood, of obtaining no recovery at all. Without arguing the litany of reasons all contingent fee cases come with some risk, and even without pointing to Defendants' pending motion to dismiss, Plaintiff and Class Counsel faced an even more daunting risk to recovering nothing for the class or themselves, namely the United States Supreme Court. Less than a month before this case was filed, the Supreme Court heard arguments in *First American Financial Corporation v. Edwards*, no. 10-708. Given the precedent of the Supreme Court, the tendencies of the current Justices and the nature of the questioning,[6] anecdotal evidence suggests that the legal community expected the Supreme Court to hold that plaintiffs not alleging actual damages, instead seeking only statutory damages under federal consumer protection statutes, lacked Article III standing to pursue their claims in federal court. Ironically, while most of the nation was awaiting a ruling on the Affordable Care Act, consumer lawyers across the country spent the last day of the Supreme Court's term focused on the decision to come in *Edwards*. In the end, the Supreme Court reversed itself and dismissed the writ of certiorari as improvidently granted. *First American Financial Corp. v. Edwards*, 132 S. Ct. 2536 (2012). However, under that cloud of uncertainty, Class Counsel not only took this case but successfully negotiated one of the most generous

---

[6] *See* Transcript, http://www.supremecourt.gov/oral_arguments/argument_transcripts/10-708.pdf.

FACTA settlements in the country.

In addition to Class Counsel obtaining a generous settlement in the face of *Edwards'* potential doom, those efforts lead to a relatively early settlement,[7] which increases the likelihood that mailing addresses in Defendants' records are still good, which increases the likelihood that class members actually receive notice of the case and settlement. In most FACTA cases, only publication notice is given. Moreover, if all goes as planned, and this Court finally approves this settlement, class members opting for vouchers will receive them in time to redeem them for flu shots <u>this</u> flu season.

## **Conclusion**

For the foregoing reasons, this Court should award attorneys' fees equal to 30% of the entire Settlement Fund, or $450,000.

                              SCOTT D.H. REDMAN,
                              Plaintiff,

                    By:   <u>s/ Paul F. Markoff</u>
                           One of his attorneys

Paul F. Markoff
Karl G. Leinberger
Markoff Leinberger LLC
134 N LaSalle St Ste 700
Chicago, IL 60602
312.726.4162 (p)
312.674.7272 (f)
paul@markleinlaw.com
karl@markleinlaw.com

---

[7] Class Counsel should not be penalized for an early settlement. A percentage of the fund method of calculating attorneys' fees precludes manipulation of factors that may enhance a fee award, such as prolonging litigation, a recognized flaw of the lodestar method. *Local 56, United Food and Commercial Workers Union v. Campbell Soup Co.*, 954 F. Supp. 1000, 1003 (D.N.J. 1997).

# **CERTIFICATE OF SERVICE**

I certify that I served a copy of this *Plaintiff's Brief in Support of Request for Attorneys' Fees* on the following electronically by using the CM/ECF system on this 28th day of August, 2012:

Bradley J. Andreozzi (bradley.andreozzi@dbr.com)
Chancé L. Cooper (chance.cooper@dbr.com)
Drinker Biddle & Reath LLP
191 N Wacker Dr
Chicago IL 60606

s/ Paul F. Markoff
Paul F. Markoff
